# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>ANGEL AMAYA,<br><br>  Defendant. | CR11-4065-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

On May 18, 2011, the grand jury returned an Indictment against the defendant Angel Amaya and three other defendants charging them with conspiracy to distribute methamphetamine, cocaine, and marijuana. *See Indictment*, Doc. No. 1.[1] On June 10, 2011, Amaya filed a motion to suppress evidence seized (1) pursuant to a search warrant at his residence; (2) during a consent search of his parents' trailer, and (3) during a search of his vehicle. Doc. No. 37. He also requested a *Franks*[2] hearing to challenge the affidavit submitted in support of the search warrant. *Id.*, p. 6. The motion was resisted by the government (Doc No. 40), and Amaya filed a reply brief (Doc. No. 44). On July 1, 2011, Amaya filed an amended and substituted motion to suppress (Doc. No. 50). The motion to suppress has been assigned to the undersigned for a report and recommendation. Doc. No. 22.

The court held a hearing on the motion on July 7, 2011. Assistant United States Attorney Robert A. Knief appeared on behalf of the government. The defendant appeared personally with his attorney R. Scott Rhinehart. The search warrant papers were admitted

---

[1] On July 28, 2011, the Grand Jury returned a Superseding Indictment (Doc. No. 77) adding two additional defendants, changing the quantity of cocaine alleged in the conspiracy charge, and adding a money laundering count. *See* Doc. No. 78. Nothing in the Superseding Indictment changes the analysis in this Report and Recommendation.

[2] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

into evidence as Government Exhibit 1. Reports of two debriefings of a cooperating source, Didier Cancino-Torres ("Cancino"), were admitted as Government Exhibit 2. Special Agent David Jensen of the Drug Enforcement Agency testified at the hearing. Also, the court has taken judicial notice of the court file in *United States vs. Didier Cancino-Torres*, 11 CR 4013-DEO. On July 8, 2011, Amaya filed a post hearing supplemental brief in support of his motion to suppress. Doc. No. 61. The motion now is fully submitted.

## I. BACKGROUND FACTS

On February 16, 2011, Didier Cancino-Torres was indicted in this court on drug distribution charges. *See United States v. Cancino-Torres*, 11 CR 4013, *Superseding Indictment*, Doc. No. 13. On March 2, 2011, federal agents conducted a proffer interview of Cancino. Gov't Ex. 2, pp. 1-5. Cancino initially minimized the extent of his drugs dealings, but admitted that he had obtained methamphetamine from someone named "Angel" on two occasions. He stated that his first purchase of methamphetamine from Angel was two ounces and the second was three and one-half ounces. Later in the interview, Cancino was warned by the agents not to lie, and after he consulted privately with his attorney, he admitted that he had purchased a total of a pound and a quarter of methamphetamine from Angel. Later in the interview he admitted that the quantity might have been larger. Cancino provided the agents with Angel's telephone number, and told them that Angel drove a dark gray or blue/gray 2003 or 2004 Dodge pickup and lived in a trailer off of Morningside Avenue near a gas station.[3]

On April 4, 2011, Cancino signed a plea agreement in which he agreed to cooperate with law enforcement. Doc. No. 51-1, 11 CR 4013. On April 27, 2011, Cancino gave

---

[3]This address turned out to be the address of Amaya's parents, where the government contends Amaya engaged in drug-dealing activities.

a second proffer to the drug agents. *Id*., pp. 6-8. He was shown a copy of the report of his first interview and was asked for any corrections. In response, he described additional drug dealing activities with Angel. He also identified Amaya fron a photograph as being the "Angel" with whom he had been dealing. The next day, on April 28, 2011, Cancino pled guilty to four drug distribution charges in this court. Doc. No. 53, 11 CR 4013.

The officers then conducted at least one "trash pull" at Amaya's residence. They found vacuum-sealed bags, one of which smelled strongly of marijuana; two digital scale boxes; and loose plastic wrap consistent with wrappings used to bundle drugs. On May 6, 2011, officers performed a traffic stop on a vehicle being driven by Amaya and arrested him on traffic charges. A police dog alerted to the passenger seat of the vehicle, and the vehicle was searched. They seized two cell phones, but no drugs or contraband was discovered in the vehicle. The defendant made no statements after his arrest.

DEA officers then obtained a State of Iowa search warrant to search Amaya's residence in Sioux City. During the search, the officers seized a quantity of cocaine, a motorcycle, a camcorder, and a bill of lading. The officers then went to a trailer where Amaya's parents lived, and Amaya's parents gave the officers consent to search the trailer. During that search, the officers seized several vacuum-sealed bags, some carbon paper, and some drug records, all of which the government contends belong to Amaya.

## II. DISCUSSION

Amaya argues that the affidavit submitted in support of the application for the warrant to search his house was not sufficient to establish probable cause to support the issuance of the warrant. He therefore argues that the items seized during the search should be suppressed. He maintains that the affidavit was a "bare bones" affidavit that stated only "suspicions, beliefs or conclusions to justify the issuance of a search warrant" that were insufficient to establish probable cause. Doc. No. 50, p. 6. The court disagrees.

3

The judicially created exclusionary rule to the Fourth Amendment "forbids the use of improperly obtained evidence at trial." *United States v. Barnum*, 564 F.3d 964, 968-69 (8th Cir. 2009) (quoting *Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 699 (2009)). Not every Fourth Amendment violation, however, results in exclusion of the evidence obtained pursuant to a defective search warrant. *United States v. Hamilton*, 591 F.3d 1017, 1027 (8th Cir. 2010) (citing *Herring*, 555 U.S. at ___, 129 S. Ct. at 700). Rather, the exclusionary rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Herring*, 555 U.S. at ___, 129 S. Ct. at 699 (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 620 (1974)). In this regard, the rule applies only where it results in appreciable deterrence, *id.* at ___, 129 S. Ct. at 700, and in applying the rule the court balances the benefits of deterrence against the costs of excluding the evidence. *Hamilton*, 591 F.3d at 1028. The court also assesses the flagrancy of the police misconduct in determining the application of the exclusionary rule, which serves to "deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 555 U.S. at ___, 129 S. Ct. at 702; *see Hamilton*, 591 F.3d at 1029.

"If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established." *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983); *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)) (internal quotation marks omitted). "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts." *Id.* at 631-32 (quoting *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331) (internal quotation marks omitted). Accordingly, the court examines

the sufficiency of a search warrant affidavit "using a common sense and not a hypertechnical approach." *Id.* at 632 (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)) (internal quotation marks omitted). "When reviewing a probable cause finding, the duty of this court is simply to ensure that the judicial officer that authorized the search had a substantial basis for concluding that probable cause existed . . . ." *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (quoting *Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332) (internal quotation marks omitted). If the issuing judge had a substantial basis for concluding that a search would uncover evidence of wrongdoing, his determination of probable cause should be upheld. *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (citing *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331).

Thus, the scope of this court's review of the search warrant in this case is limited to a determination of whether the magistrate had a "substantial basis" to conclude a search would uncover evidence of wrongdoing. In conducting this review, the court is mindful that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *Gates*, 462 U.S. at 235, 103 S. Ct. at 2330 (internal quotation marks omitted). "[M]any warrants are . . . issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." *Id.* at 235-36, 103 S. Ct. at 2331. The task of the issuing judge is simply "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S. Ct. at 2332.

Notably, even if, in hindsight, the information in the affidavit is deemed insufficient to support a finding of probable cause to issue the warrant, the evidence will not be suppressed if the officers acted in reasonable, good faith reliance on a search warrant

issued by a neutral and detached magistrate. *United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 3420, 82 L. Ed. 2d 677 (1984); *accord United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004). "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, . . . and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922-23, 104 S. Ct. at 3420 (citations and footnote omitted). As the United States Supreme Court noted in *Leon*:

> It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.

*Id.* at 923 n.24, 104 S. Ct. at 3420 n.24 (citations omitted).

Thus, if serious deficiencies exist either in the warrant application itself (*e.g.*, where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *id.* at 923, 104 S. Ct. at 3421 (citing *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)), or in the magistrate's probable cause determination, then the *Leon* good-faith exception may not apply. As the *Leon* Court explained:

> Deference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. Second, the courts must also insist that the magistrate purport to "perform his 'neutral and

> detached' function and not serve merely as a rubber stamp for the police." A magistrate failing to "manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application" and who acts instead as "an adjunct law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search.
>
> Third, reviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect.

*Leon*, 468 U.S. at 914-15, 104 S. Ct. at 3416 (internal citations omitted). The Court noted that good faith on law enforcement's part in executing a warrant "is not enough," because "[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Id.* at 915 n.13, 104 S. Ct. at 3417 n.13 (citing *Beck v. Ohio*, 379 U.S. 89, 97, 85 S. Ct. 223, 228, 13 L. Ed. 2d 142 (1964), and *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 171, 4 L. Ed. 23 134 (1959)).

In the present case, in Special Agent Jensen's affidavit in support of the search warrant, he recited the following:

> On 05-05-11, agents of the DEA Tri-State Task Force conducted a trash pull at 2503 Williams Ave., Sioux City, IA. Agents had previously received historical information provided by Didier Cancino-Torres that AMAYA was a crystal methamphetamine distributor that lived in the Transit Plaza

7

> area. Cancino further stated Cancino purchased a total of 1.25 pounds of crystal methamphetamine in the Fall to Winter of 2010. Cancino described a Dodge pick-up that AMAYA drove at the time that agents subsequently located at 2503 Williams and is still parked in the driveway as of 05-07-11. Agents have conducted surveillance in May, 2011, of AMAYA and determined 2503 Williams is the residence of AMAYA. On 05-05-11, there were two garbage containers at the curb that contained the following items: Two vacuum-sealed bags, one of which smell [sic] strongly of raw marijuana, two digital scale boxes, commonly used in the distribution of drugs, and several pieces of loose plastic wrap consistent with wrapping drug bundles agents have observed in past drug investigations.
>
> On 05-06-11, AMAYA was arrested by agents for Conspiracy to Distribute Methamphetamine, Cocaine, and Marijuana. AMAYA was traffic stopped by officers on 05-06-11 and a K-9 alerted to the passenger seat of AMAYA's GMC Yukon. Seized during the traffic stop were two cell phones, an Apple I-Phone and an LG cell phone belonging to AMAYA.
>
> It has been my experience that in previous drug investigations that drug distributors use cell phones to store data, including drug customer numbers, text messages, photos, and incoming/outgoing phone contacts. Drug traffickers also store drugs, drug pay/owe sheets, drug monies, drug paraphernalia, and other items indicative of drug trafficking in their residences for personal use, later sale, and concealment.

Gov't Ex. 1, p. 7.

This affidavit contained far more than a bare statement of suspicions, beliefs, and conclusions, as contended by Amaya. First of all, the affidavit contained information from a cooperating source that Amaya was a large-scale drug dealer. The informant also described the vehicle Amaya was driving. The source's information was corroborated when the officers found the vehicle described by the source parked in Amaya's driveway. In a trash pull at Amaya's residence, officers then found items consistent with drug dealing

activities, including a bag smelling strongly of marijuana and two digital scale boxes. Then officers made a traffic stop of Amaya's vehicle, and a drug dog alerted to the passenger seat. Two cell phones were found in the vehicle. This information far exceeds the "bare bones" type of affidavit referred to by Amaya.

In his supplemental brief (Doc. No. 61), Amaya argues that the information in the affidavit did not contain sufficient facts to support a conclusion that drugs would be found in Amaya's house, and further, that the information in the affidavit was stale. The court disagrees. While the information from the cooperating source was several months old, on the day the search warrant was issued, a drug dog alerted to Amaya's vehicle. The vehicle was routinely parked in the driveway of Amaya's residence. A trash pull at the residence a few days before the search suggested strongly that two new digital scales, marijuana, and drug packaging materials would be found in the residence. These facts, together with evidence from a cooperating source that a large-scale drug dealer lived in the residence, were more than sufficient for the magistrate to conclude that drugs or other evidence of criminal activity likely would be found in the residence.[4] Although the evidence from the informant was several months old, the recently developed evidence was more than sufficient to prevent the warrant from being stale.

Amaya cites the court to *United States v. Smith*, 581 F.3d 692 (8th Cir. 2009), to support his argument that the affidavit in this case was insufficient to establish probable cause. Doc. No. 61, p. 3. In *Smith*, the affidavit recited that the defendant had a prior drug conviction and that a recent search of the trash at his residence yielded evidence of illegal drug activity. The court found that those fact established probable cause to issue a warrant to search the defendant's residence for evidence of drug trafficking. *Id*. at 694. The information submitted to the magistrate in the present case was stronger than what was

---

[4]The warrant was not only for drugs, but also was for paraphernalia, records, cellular phones, and numerous other items.

submitted to the judge in *Smith*. *See also United States v. Briscoe*, 317 F.3d 906, 908 (8th Cir. 2003) (evidence from a trash pull can contribute significantly to probable cause). The court finds the affidavit contained sufficient information to establish probable cause to support the issuance of the search warrant.

Even if the magistrate had improperly analyzed the totality of the circumstances in finding probable cause, under *Leon*, the exclusionary rule should not be applied to exclude evidence as a means of punishing or deterring the errant or negligent magistrate. The Supreme Court found that penalizing officers who act in good faith on a warrant because of a magistrate's error in issuing the warrant "cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921, 104 S. Ct. at 3419. The relevant question is whether law enforcement actions were objectively reasonable; *i.e.*, whether "the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918, 104 S. Ct. at 3418. The *Leon* Court noted:

> As we observed in *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S. Ct. 2357, 2365, 41 L. Ed. 2d 182 (1974), and reiterated in *United States v. Peltier*, 422 U.S. at 539, 95 S. Ct. at 2318:
>> "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."

The *Peltier* Court continued, *id.* at 542, 95 S. Ct. at 2320:

> "If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."

*Leon*, 468 U.S. at 919, 104 S. Ct. at 3418-19.

Applying these standards, the court finds that even if probable cause did not support the warrant, suppression of the evidence seized pursuant to the warrant is not appropriate under the principles of *Leon*. *See Herring*, 555 U.S. at ___, 129 S. Ct. at 700 (exclusion has always been a last resort).

Amaya also argues that the officer who obtained the search warrant withheld information from the issuing magistrate that, if it had been disclosed, would have resulted in the warrant not being issued. Amaya points out that the officer did not advise the magistrate that Cancino was an illegal alien. The officer also failed to disclose to the magistrate that during his two proffers Cancino at first minimized his involvement in drug dealing activities but then changed his story several times, each time admitting to an increased level of involvement. The officer also failed to advise the magistrate the fact that Cancino had recently pled guilty to federal drug charges. Amaya argues that if these facts had been disclosed to the issuing magistrate, she would not have issued the search warrant. He therefore argues that the items seized from his home pursuant to the warrant should be suppressed under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

To be entitled to a hearing on a *Franks* claim, the defendants first must make a "substantial preliminary showing" that a false statement necessary to the finding of probable cause was "knowingly and intentionally, or with reckless disregard for the truth," included in the warrant affidavit or that information critical to a finding of probable cause

was left out of the affidavit. *Franks*, 438 U.S. at 155, 98 S. Ct. at 2676. Amaya never made such a showing, but the court nevertheless provided Amaya with a *Franks* hearing. At the hearing, Amaya failed to make the required showing. As the court stated in *Smith*:

> Absent a finding of deliberate falsehood or reckless disregard for the truth, what a facially valid warrant affidavit *might have contained* is simply irrelevant. Moreover, because a warrant application need only show facts establishing probable cause, "recklessness may be inferred from the . . . omission of information from an affidavit . . . only when the material omitted would have been clearly critical to the finding of probable cause." *United States v. Ozar*, 50 F.3d 1440, 1445 (8th Cir. 1995) (quotation omitted). Here, as the district court noted, omission of the fact that Smith's trash included mail addressed to other persons at 4401 5th Avenue South, and that trash from two garbage cans might have been pulled, raising the possibility that the drug residue and paraphernalia came from the other unit's trash, did not eliminate the affidavit's showing of a fair probability that evidence of narcotics trafficking could be found in Smith's home.

*Smith*, 581 F.3d at 695 (alteration in original). As in *Smith*, Amaya has offered no evidence to show that the officer who signed the search warrant affidavit intentionally or recklessly omitted from the affidavit information that would have been "clearly critical" to a finding of probable cause. The fact that an informant who admitted dealing drugs had pled guilty to drug charges in federal court was not critical to a finding of probable cause. It already was apparent from the affidavit that the informant was a drug dealer. The fact that he had pled guilty to charges that he was a drug dealer would have provided no new information to the magistrate. Likewise, the fact that the informant at first minimized his involvement in drug dealing activities during his proffer but later changed his story and admitted more extensive involvement, is common and expected in such situations. *See United States v. Mitten*, 592 F.3d 767, 774 (7th Cir. 2010) ("[I]t is probable that both informants in this case provided their information after they had been arrested for selling

crack and were motivated by a desire to lessen the consequences they would likely suffer for their own crimes. That is almost always the case in drug investigations, but it does not make the information they provide inherently unreliable."). This additional information would have had no significant influence on the magistrate's probable cause determination. In fact, "[s]tatements against the penal interest of an informant naturally carry considerable weight" in finding probable cause to search. *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996); *see also United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005) (informant's admission of greater culpability than originally suspected was statement against penal interest carrying presumption of reliability; informant's motive to curry favor does not necessarily render an informant unreliable). Finally, the fact that the informant was an illegal alien had nothing to do with the probable cause determination. In sum, Amaya has failed to establish a *Franks* violation in the present case.

Amaya also asks the court to suppress the items seized during the consent search of his parents' trailer as "the fruit of the poisonous tree" because it followed from the defective search warrant for the search of his house, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963). The argument fails at the outset because the court has found that the warrant was not unlawful. Furthermore, the uncontroverted evidence at the hearing was that the search of Amaya's parents' trailer did not follow from anything seized pursuant to the search warrant, and would have taken place whether or not anything was found during the execution of the search warrant. Tr. pp. 22-24. Finally, Amaya has not shown that he has standing to challenge this search of his parents' trailer. *See United States v. Randolph*, 628 F.3d 1022, 1026 (8th Cir. 2011) (To contest the validity of a search, a person must show that he had a reasonable expectation of privacy in the place searched).

Finally, Amaya asks the court to suppress items seized from his vehicle at the time of his arrest. He states no grounds for this request, and in any event, the government

represents that no evidence was seized from the vehicle that will be offered at trial. Amaya has failed to establish that the court should issue a suppression order in connection with anything seized during the search of the vehicle.

### III. CONCLUSION

For the reasons discussed above, IT IS RESPECTFULLY RECOMMENDED that the motion to suppress be **denied**. Objections to this Report and Recommendation must be filed by **August 15, 2011**. Responses to objections must be filed by **August 22, 2011**.

**IT IS SO ORDERED.**

**DATED** this 8th day of August, 2011.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT